UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES R. RICH,<br><br>                Petitioner,<br><br>v.<br><br>THE HONORABLE SEAN J. STACKLEY,<br><br>                Respondent. | Case No.: 3:17-cv-01298-GPC-JMA<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**<br><br>**[ECF No. 1]** |

Petitioner James R. Rich ("Petitioner") is currently in the custody of the United States Department of Navy. (*See* ECF No. 1 at 1-2.[1]) On June 26, 2017, Petitioner filed a petition for writ of habeas corpus ("Petition"). (*Id.*) He seeks to "reverse, overturn, and vacate" his general court-martial conviction of aggravated sexual abuse of a child and its accompanying sentence of 7 years confinement and dishonorable discharge. (*Id.* at 22.) Respondent, the Honorable Sean J. Stackley, Secretary of the Navy ("Respondent"), filed a response on August 7, 2017 (ECF No. 7), and Petitioner filed a reply on August 28,

---

[1] Page numbers are based on CM/ECF pagination.

1

2017. (ECF No. 10.) The Court decides the matter on the papers submitted and without oral argument pursuant to Civil Local Rule 7.1.d.1. After a thorough review of the issues and the documents presented, the Court **DENIES** the Petition for writ of habeas corpus.

I.  **Factual Background**

In January 2012, Petitioner was living with his girlfriend, M.D., and her three-year-old daughter from a prior marriage, A.D. (ECF No. 1-2 at 2.) Occasionally, Petitioner would pick up A.D. from preschool and watch her until M.D. returned home. (*Id.*) During this time, Petitioner claims that he gave A.D. "supervised" access to his cell phone. (ECF No. 1 at 4.) The cell phone contained a video depicting M.D. performing oral sex on Petitioner. (*Id.*)

On January 17, 2012, after returning home, M.D. began preparing herself and A.D. for a shower. A.D. stated, "Guess what, I kissed Guy's private parts." (ECF No. 1-2 at 2.) "Guy" was the moniker A.D. used for Petitioner. (*Id.*) M.D., attempting to remain light and upbeat, responded, "No you didn't." (*Id.*) A.D. said that she did. (*Id.*) M.D. puckered her closed lips and kissed A.D.'s hand, asking, "Well, did you kiss it like this?" (*Id.* at 2-3.) A.D. replied, "No, Mommy, I did it like this," and A.D. opened her mouth and moved her head up and down. (*Id.* at 3.) A.D. also described Petitioner placing his hands on the back of her head during the incident. (*Id.*) A.D. said that the incident occurred in a chair in the living room while M.D. was not home. (*Id.*) The next day, M.D. reported the incident to local authorities. (*Id.*) Petitioner asserts that, shortly thereafter, M.D. sent A.D. out of state to live with her father. (ECF No. 1 at 5.)

II. **Procedural Background**

Petitioner was charged with aggravated sexual abuse of a child and was tried in military court at a general court-martial trial. (*Id.*) He was tried before a "panel of

members," the functional equivalent of a jury.[2] (*See* ECF No. 1-2 at 3.) At trial, the panel heard M.D. and A.D. testify. (*See* ECF No. 1 at 5-6.) According to Petitioner, at the time of trial, nearly three years had passed since the alleged abuse and A.D. was six-years-old. (ECF No. 1 at 5.) M.D.'s testimony included the out-of-court statements A.D. made on January 17, 2012. (*See* ECF No. 1-2 at 4.) The military judge admitted these statements into evidence under the excited utterance and residual exceptions to hearsay pursuant to Military Rules of Evidence 803(2) and 807, respectively. (*Id.*) The panel convicted Petitioner of aggravated sexual abuse of a child under Article 120 of the Uniform Code of Military Justice. (*Id.* at 1-2.)

At presentencing, Petitioner presented evidence of his good military character. (*Id.* at 3.) The military judge instructed the panel that all the evidence presented was relevant to the subject of sentencing. (*Id.*) The panel sentenced Petitioner to seven years confinement and a dishonorable discharge. (*Id.* at 2.)

### a. Petitioner's Appeal

Petitioner appealed to the United States Navy-Marine Corps Court of Criminal Appeals (the "NMCCA"). The NMCCA affirmed, after considering three issues: (1) whether Petitioner was deprived a fair and impartial panel; (2) whether the military judge erred in admitting A.D.'s hearsay statements; and (3) whether the evidence against Petitioner was constitutionally insufficient. (*Id.*)

#### 1. *Fair and Impartial Panel*

Petitioner claimed his right to a fair and impartial panel was violated because a member, LT Kim, was allegedly dishonest during *voir dire*. (*Id.* at 3.) During *voir dire*,

---

[2] *See* Rules for Court-Martial (R.C.M.) 501 (describing the general composition and personnel of courts-martial) and 502(a)(2) (providing that members shall determine whether the accused is proved guilty and adjudge a proper sentence). Petitioner's panel was comprised of officers and enlisted service members. (ECF No. 7 at 2.)

3

LT Kim said he could abide by the military judge's instruction to consider all evidence as relevant. (ECF No. 1 at 7.) Kim further affirmed his ability to discard predetermined attitudes about the need to impose a particular type of punishment based on the nature of Petitioner's offense. (*Id.*) During *voir dire* in a subsequent, unrelated court-martial, however, LT Kim indicated that he would not consider the accused's entire career when determining an appropriate sentence unless the military judge ordered him to do so. (*Id.*) LT Kim allegedly stated: "In the previous trial I was presented with . . . all the great things that the defendant had done for the Navy . . . but I just found them to be irrelevant at the time." (*Id.* at 9; *see also* ECF No. 1-2 at 3-4.) Upon further inquiry, LT Kim also stated that he "might have zoned out" when the military judge was giving instructions. (ECF No. 1 at 9.)

The NMCCA held that the proffered evidence of LT Kim's dishonesty during *voir dire* were the statements about his mental process during sentencing deliberations, which were inadmissible under Military Rules of Evidence 606(b). (ECF No. 1-2 at 4.) Thus, the NMCCA held that no competent evidence was presented to consider a claim that Petitioner was denied a fair and impartial panel of members. (*Id.*)

### 2. *Hearsay Evidence*

Next, Petitioner argued that the military judge abused his discretion by admitting A.D.'s hearsay statements. The NMCCA disagreed. Limiting its analysis to the residual hearsay exception, the NMCCA found nothing clearly erroneous in the military judge's rationale. (*Id.* at 4–6.)

### 3. *Sufficiency of the Evidence*

Finally, Petitioner argued that the testimony offered by the prosecution—which consisted of testimony regarding A.D.'s statements—was insufficient evidence to sustain his conviction. (*Id.* at 6.) In response, the NMCCA noted that Petitioner's "chosen crime, victim, and setting – oral penetration without ejaculation of the three-year-old

when no one else was home – hardly lent themselves to additional evidence." (*Id.* at 7.) The court considered the spontaneous and consistent nature of A.D.'s statements; her use of age-appropriate terms; and the lack of indication that A.D. made the statements in response to suggestive questioning or with a motive to fabricate. (*Id.*) After its review of the record, the NMCCA concluded that the evidence against Petitioner was sufficient to sustain his conviction. (*Id.*)

### b. Petitioner's Federal Habeas Corpus Petition

On February 26, 2016, Petitioner filed a petition with the United States Court of Appeals for the Armed Forces ("CAAF") for a grant of review. (*See id.* at 8-16.) On March 28, 2016, the CAAF denied the petition. (ECF No. 1-3.) On June 26, 2017, Petitioner filed this Petition pursuant to 28 U.S.C. § 2241. (ECF No. 1.)

### III. Legal and Statutory Framework

Federal district courts have jurisdiction to review habeas corpus petitions challenging military convictions pursuant to 28 U.S.C. § 2241. *Burns v. Wilson*, 346 U.S. 137, 139 (1953). While determinations made in military proceedings are final and binding on all courts, 10 U.S.C. § 876, the federal civil courts' jurisdiction over a petition for habeas corpus from a military prisoner is not displaced. *Schlesinger v. Councilman*, 420 U.S. 738, 745 (1975) (taking note of the binding nature of court-martial decisions on civil courts, but also recognizing the civil courts' jurisdiction to review habeas petitions stemming from court-martial convictions).

The scope of this Court's review of military convictions, however, is narrow. *Burns*, 346 U.S. at 139–40 ("[T]he law which governs a civil court in the exercise of its jurisdiction over military habeas corpus applications cannot simply be assimilated to the law which governs the exercise of that power in other instances."). Review is limited to claims that were not given "full and fair consideration" by the military court. *Id.* at 142; *Broussard v. Patton*, 466 F.2d 816, 818 (9th Cir. 1972); *Sunday v. Madigan*, 301 F.2d

871, 873 (9th Cir. 1962) (holding that once a civil court has concluded the military dealt fully and fairly with petitioner's claims, the court may not grant writ simply to re-evaluate evidence). Moreover, review is limited to issues concerning constitutional fairness and does not include interpretation of military procedural rules. *Burns*, 346 U.S. at 139 (explaining that federal civil courts have jurisdiction over habeas petitions filed alleging the proceedings "denied them basic rights guaranteed by the Constitution"); *Broussard*, 466 F.2d at 818 (asserting habeas corpus is available to vindicate constitutional rights); *Kauffman v. Secretary of the Air Force*, 415 F.2d 991, 997 (9th Cir. 1969) (adopting a standard of review for military habeas petitions consistent with the standard imposed on habeas petitions stemming from state convictions); *see also Allen v. U.S. Air Force*, 603 F.3d 423, 433 n.4 (8th Cir. 2010) ("*Burns* and its progeny appear only to deal with claims of constitutional violations, not violations of military procedural rules."); *Dodson v. Zelez*, 917 F.2d 1250, 1252 (10th Cir. 1990) (holding federal jurisdiction to review court-martial proceedings requires "[t]he asserted error . . . be of substantial constitutional dimension").

Petitioner has raised three distinct issues of constitutional fairness. First, Petitioner asserts a violation of his Sixth Amendment right to an impartial jury. Second, he claims the military judge erred in admitting hearsay evidence in violation of his Sixth Amendment right to confront the witnesses against him. Finally, Petitioner raises a Due Process challenge by claiming the evidence upon which he was convicted is constitutionally insufficient. This Court address each of Petitioner's claims in turn.

IV. **Merits**

  A. **Fair and Impartial Panel**

Petitioner claims that he was denied the right to a fair and impartial panel because LT Kim allegedly lied during *voir dire* and disregarded Petitioner's character evidence in

6

3:17-cv-01298-GPC-JMA

deliberations.  (ECF No. 1 at 15.)  The Sixth Amendment guarantees criminal defendants the right to a fair trial by a panel of unbiased, indifferent jurors.  U.S. Const. amend. VI; *Irvin v. Dowd*, 366 U.S. 717, 722 (1961); *United States v. Shapiro*, 669 F.2d 593, 602 (9th Cir. 1982).  To establish a constitutional claim on the ground of juror bias, a litigant must demonstrate that a dishonest answer was given on *voir dire* to a material question and that the correct response would have provided a valid basis for a challenge for cause.  *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 556 (1984); *Hamilton v. Ayers*, 583 F.3d 1100, 1107 (9th Cir. 2009).

While the NMCCA recognized that LT Kim's honesty during Petitioner's *voir dire* was questionable, the court refused to address the merits of Petitioner's claim because the only proffered evidence of LT Kim's purported dishonesty were statements about his mental process during sentencing deliberations.  According to the NMCCA, these post-trial statements are inadmissible under Military Rule of Evidence 606(b)(1), which prohibits "testimony or other evidence" regarding "any statement made or incident that occurred during the deliberations of that court-martial . . . or any member's mental processes concerning the finding or sentence."

Petitioner argues that panel member LT Kim had an actual and implied bias, which he masked through dishonest responses during *voir dire* in violation of Petitioner's right to an unbiased jury panel.  (ECF No. 1 at 15.)  But Petitioner provides no evidence that LT Kim's mindset was, in fact, predetermined at the time of *voir dire*.  The only evidence Petitioner presents is LT Kim's statement, "I was presented with . . . all the great things that the defendant had done for the Navy . . . but I just found them to be irrelevant *at the time*."  (*Id.* at 9 (emphasis added).)  LT Kim was referring to his mindset at the time of sentencing deliberations, after he was presented with Petitioner's character evidence, not at the time of *voir dire*.  (*Id.*)  Petitioner makes no claim that LT Kim was even asked about his mindset regarding the relevance of good military character during *voir dire*.

7

3:17-cv-01298-GPC-JMA

In sum, Petitioner has failed to demonstrate any Sixth Amendment violation with respect to the membership of his jury panel.

### B. Hearsay Evidence and the Confrontation Clause

Petitioner contends that the military judge erred in admitting hearsay evidence under the excited utterance and residual exceptions outlaid respectively in Military Rules of Evidence 803(2) and 807. (ECF No. 1 at 16, 18.) In his reply memorandum, Petitioner also asserts that his Sixth Amendment right to be confronted by the witnesses against him was violated as result of the admission of A.D.'s statements. (ECF No. 10 at 7.) It is beyond the scope of this Court's review to address the application of military procedural rules. *See Burns*, 346 U.S. at 139; *see also Allen*, 603 F.3d at 433 n.4. Hence, the Court will limit its analysis to the alleged violation of Petitioner's Sixth Amendment right and whether the NMCCA provided a full and fair consideration of this issue.[3]

As stated above, Petitioner raised the Sixth Amendment issue for the first time in his Reply memorandum. (ECF No. 10 at 7.) The Court may find an argument waived and may refuse to consider it unless it is specifically and distinctly argued in a party's opening memorandum. *See, e.g.*, *All Star Seed v. Nationwide Agribusiness Ins. Co.*, No. 12-cv-146-L-BLM, 2014 WL 1286561, at *15 (S.D. Cal. Mar. 31, 2014). It also appears that Petitioner never presented this argument to a military court, raising the specter that he failed to exhaust. *See Davis v. Marsh*, 786 F.2d 1446, 1449 (9th Cir. 1989) ("Military

---

[3] The Court notes that even a cursory review of the Military Rules of Evidence render an outcome unfavorable to Petitioner. Federal Rule of Evidence 807 (the residual exception to hearsay) is the federal analogue to Military Rule of Evidence 807 and has the same foundational requirements. *Compare* Fed. R. Evid. 807, *with* Mil. R. Evid. 807. Judges have a fair degree of latitude and flexibility to admit necessary statements that would otherwise be hearsay. *See United States v. Bonds*, 608 F.3d 495, 501 (9th Cir. 2010). Hearsay evidence is deemed necessary where a witness cannot remember details about a material fact and there is no other more probative evidence of that fact. *United States v. Owens*, 484 U.S. 554, 561-64 (1988). Here, A.D. could not remember details about the sexual assault that took place during her earlier childhood and, as the NMCCA pointed out, there is no more probative evidence because Petitioner was alone with A.D. during the alleged assault. (*See* ECF No. 1-2 at 7.)

8

prisoners must exhaust military remedies before seeking relief in federal court.").

But even if the Court were to consider the Confrontation Clause argument Petitioner raises for the first time in his Reply, the Court would reject the argument. Petitioner relies extensively on overturned case law in his discussion about the Confrontation Clause. (*See* ECF No. 10 at 5-10.) Petitioner argues, "In order for a judge to grant hearsay evidence in a trial he must feel as if the child's out of court statement has 'particularized guarantees of trustworthiness.'" (*Id.* at 5 (citing *Idaho v. Wright*, 497 U.S. 805 (1990); *Ohio v. Roberts*, 448 U.S. 56 (1980).) In 2004, however, the Supreme Court abrogated *Idaho* and *Roberts* and established a new test to determine whether a Confrontation Clause violation has occurred. *See Crawford v. Washington*, 541 U.S. 36 (2004) (explicitly overturning *Roberts* and its progeny, thereby replacing the "trustworthiness" standard with a "testimonial" standard for Confrontation Clause determinations).

The Sixth Amendment's Confrontation Clause provides, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend VI. *Roberts* and its progeny held that an unavailable witness's out-of-court statements may be admitted if it falls within a "firmly rooted hearsay exception" or bears "particularized guarantees of trustworthiness." *Roberts*, 448 U.S. at 66; *see also Idaho*, 497 U.S. at 815. In an express departure from *Roberts*, the Supreme Court wrought a new standard in *Crawford*. 541 U.S. 36. It held, "[w]here *testimonial* evidence is at issue . . . the Sixth Amendment demands . . . unavailability and a prior opportunity for cross-examination." *Id.* at 68 (emphasis added); *see also Ohio v. Clark*, 135 S. Ct. 2173, 2179 (2015). Nontestimonial statements, however, "do not implicate the Confrontation Clause." *Clark*, 135 S. Ct. at 2177; *see also United States v. Sine*, 493 F.3d 1021, 1035 n.11 (9th Cir. 2007) ("Only testimonial out-of-court statements raise Confrontation Clause concerns."). An out-of-court statement qualifies as

testimonial evidence if the "'primary purpose' of the conversation was to 'create an out-of-court substitute for trial testimony.'" *Clark*, 135 S. Ct. at 2180 (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)). Statements are considered nontestimonial when made under circumstances objectively indicating that the primary purpose is to meet an ongoing emergency. *Compare Davis v. Washington*, 547 U.S. 813, 828 (2006) (finding victim's statements to a 911 operator shortly after her boyfriend's violent attack nontestimonial), *with Hammon v. Indiana*, 547 U.S. 813, 829-30 (2006) (finding statements testimonial where the victim spoke to police after being isolated from her abusive husband).

*Clark* illustrates the distinction between testimonial and nontestimonial statements through facts analogous to those in Petitioner's case. 135 S. Ct. 2173. There, teachers discovered red marks on three-year-old child, L.P. *Id.* at 2177. In order to determine who might be abusing L.P. and to ensure he was not returned to an unsafe environment, teachers questioned the child. *Id.* at 2181. In turn, L.P. identified his mother's boyfriend as the abuser. *Id.* at 2177. The Supreme Court held that L.P.'s statements occurred in the context of an ongoing emergency involving suspected child abuse. *Id.* at 2181. It was "irrelevant that the teachers' questions and their duty to report the matter had a natural tendency to result in Clark's prosecution." *Id.* at 2183. L.P.'s statements were nontestimonial because neither L.P. nor his teachers had the primary purpose of assisting in Clark's prosecution. *Id.* at 2177. Thus, admitting L.P.'s statements into evidence did not implicate the Confrontation Clause. *Id.*

Petitioner makes no argument as to the testimonial nature of A.D.'s out-of-court statements. Even so, A.D.'s statements to M.D. were nontestimonial. A.D. was three-years-old at the time Petitioner abused her. Like the red marks on L.P.'s body, A.D.'s spontaneous statement, "I kissed Guy's private parts," raised suspicion of abuse. In response, M.D. said, "No you didn't." She then sought to clarify the type of "kiss" A.D.

was referring to by closing her lips, kissing A.D.'s hand, and asking "Well, did you kiss it like this?" It is clear from M.D.'s mode of questioning that she sought to determine the validity of A.D.'s statements. Like the teachers in *Clark*, M.D.'s motive was to decide whether A.D. needed to be removed from a potentially unsafe environment. This is apparent from the fact that M.D. promptly moved A.D. out of state to live with her father following A.D.'s statements. It is irrelevant that M.D.'s questions had a natural tendency to result in Petitioner's prosecution. *See Clark*, 135 S. Ct. at 2183. A.D. was spontaneously sharing her day's experiences, while M.D. was focused on ensuring her daughter's safety. A.D.'s out-of-court statements offered against Petitioner were nontestimonal and thereby exempt from Confrontation Clause scrutiny. *See Sine*, 493 F.3d at 1035 n.11.

### C. Constitutional Sufficiency

Petitioner was convicted of aggravated sexual abuse of a child pursuant to Article 120 of the Uniform Code of Military Justice. (ECF. No. 1-2 at 7.) The elements of this crime are: (1) that the accused engaged in a lewd act, and (2) that the act was committed with a child who had not attained the age of 16 years. (ECF No. 1-2 at 7.) Petitioner claims that his court-martial conviction rests on evidence that is insufficient to justify a finding of these essential elements beyond a reasonable doubt. (ECF No. 1 at 21.)

Due Process protects an accused against conviction except upon proof beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 365 (1970). "It is well established that the uncorroborated testimony of a single witness may be sufficient to sustain a conviction." *United States v. Katakis*, 800 F.3d 1017, 1028 (9th Cir. 2015) (quoting *United States v. Dodge*, 538 F.2d 770, 783 (8th Cir. 1976)). "[T]he critical inquiry on review of the sufficiency of the evidence to support a criminal conviction must be not simply to determine whether the jury was properly instructed, but to determine whether the record evidence could reasonable support a finding of guilt beyond a reasonable

11

doubt. . . . [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979).

Where the constitutional issue in a military habeas corpus petition involves a factual determination, it is not the civil court's duty to reexamine and reweigh each item of evidence which tends to prove or disprove the allegations of the petition. *Burns*, 346 U.S. at 144; *see also Kennedy v. Commandant, U.S. Disciplinary Barracks, Fort Leavenworth, Kan.*, 377 F.2d 339, 342 (10th Cir. 1967); *Rushing v. Wilkinson*, 272 F.2d 633, 642 (5th Cir. 1959). Instead, the civil court's inquiry is limited to whether the military court gave full and fair consideration to the constitutional question presented. *Burns*, 346 U.S. at 144. In determining fairness, the civil court must examine whether the constitutional rulings of a military court conform to prevailing Supreme Court standards. *Kauffmann*, 415 F.2d at 997.

The Court has received varying depictions of the evidence offered against Petitioner at trial. Petitioner asserts that "the *only* evidence in support of the alleged sexual act" was A.D.'s trial testimony, taken three years after the alleged event had occurred. (ECF No. 1 at 20 (emphasis added).) However, in his subsequent Reply brief, Petitioner concedes that M.D. also testified about the statements A.D. made to her the same day as the alleged abuse. (ECF No. 10 at 11.) Petitioner further confuses his argument by asserting, "at the time of trial [A.D.] was able to testify about the . . . event and describe it in detail," (*id.* at 5), but later stating "[A.D.] was unable to testify at trial," (*id.* at 11). Meanwhile, according to the NMCCA's recitation of the trial judge's findings, "A.D. was available and able to testify, but not to the same level of detail that she gave her mother two and a half years prior, directly after the incident." (ECF No. 1-2 at 6.) Without a complete trial record, this Court is left to unravel a muddled account of

the evidence upon which Petitioner was convicted. Regardless, for the reasons explained below, the Court concludes that whatever the exact contents of the evidence presented at trial in Petitioner's case, the military courts provided a full and fair consideration of Petitioner's arguments with regard to whether the evidence was sufficient to convict him.

Petitioner argues that the statements and accounts provided by A.D. were insufficient because A.D. lacked credibility. (*See* ECF No. 10 at 11.) First, Petitioner contends that A.D. had access to his cell phone, which contained a video of A.D.'s mother (M.D.) performing oral sex on Petitioner. (*See* ECF No. 1 at 21.) Notably, Petitioner does not claim that A.D. actually saw the video, only that she had "supervised" access to the cell phone where it was stored. (*See* ECF No. 1 at 3.) Essentially, Petitioner argues that the mere existence of this pornographic video on his cell phone demonstrates that A.D.'s statements cannot be trusted.

Second, Petitioner alleges that A.D.'s memory of the sexual abuse vacillated between the time the incident occurred and the time of trial. (*See id.* at 21.) As Petitioner points out, A.D. was merely three-years-old at the time of the abuse. Yet, A.D. was able to describe her sexual encounter with Petitioner in detail, noting the location of the incident—in a chair in the living room; the manner in which she performed the act—with an open mouth, moving her head up and down; and Petitioner's behavior—placing his hands on the back of her head. By the time of Petitioner's trial, nearly three years had passed; A.D. was now six-years-old and, unsurprisingly, she was unable to provide the same level of detail.

In its examination of A.D.'s credibility and the sufficiency of her statements, the NMCCA considered the following: the spontaneity and consistency of A.D.'s statements; her use of age-appropriate language; and the lack of indication that she made the statements under suggestive pretenses or with a motivation to fabricate. (*See* ECF No. 1-2 at 7.) The NMCCA concluded that the evidence against Petitioner, coupled with the

13

circumstances surrounding its procurement, was sufficient regardless of the fact that A.D. was the sole, uncorroborated witness. (*Id.* at 7.)

A review of the NMCCA's discussion demonstrates that it "scrutinized the trial records before rejecting petitioner['s] contentions." *Burns*, 346 U.S. at 144. The NMCCA considered all of the evidence before the trial court, and it applied the applicable military law standards for evaluating evidentiary sufficiency. (*See* ECF No. 1-2 at 6-7.) The test for "legal sufficiency" applied by the NMCCA was "whether, considering the evidence in the light most favorable to the prosecution, any reasonable fact-finder could have found all the essential elements beyond a reasonable doubt" (*id.* at 6 (quoting *United States v. Day*, 66 M.J. 172, 173 (C.A.A.F. 2008)), and the test for "factual sufficiency" applied by the NMCCA was whether "after weighing all the evidence in the record of trial and recognizing that we did not see or hear the witnesses as did the trial court, this court is convinced of the appellant's guilt beyond a reasonable doubt" (*id.* (quoting *United States v. Rankin*, 63 M.J. 552, 557 (N.M. Ct. Crim. App. 2006)). These standards comport with the requirements of the Due Process Clause, *see Jackson*, 443 U.S. at 319 (crafting the same legal standard for review of convictions in civil courts), and Petitioner does not suggest that the trial court instructed the panel members to use any evidentiary standard other than guilt beyond a reasonable doubt. Nor is there any reason to believe that, as to the sufficiency issue, the military courts did not "hear petitioner[] out on every significant allegation, scrutinize the trial records, and accord petitioner[] a complete opportunity to establish the authenticity of [his] claims." *Gurry v. Butera-Ortiz*, No. C 11-00964 RS, 2012 WL 3276983, at *3 (N.D. Cal. Aug. 9, 2012) (internal quotation marks and alterations omitted). Because the NMCCA's analysis was consistent with constitutional principles supported by Supreme Court jurisprudence, this Court must conclude that Petitioner received a full and fair consideration regarding the sufficiency of the evidence against him, which ends this

Court's inquiry on this issue. *See Broussard*, 466 F.2d at 819 (holding that full and fair consideration was given when petitioner presented a statute-of-limitations argument to the Air Force Court of Military Review and that court rejected the claim after "thoroughly consider[ing] the relevant law and facts").

## V. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability [COA] when it enters a final order adverse to the applicant." The Rules Governing Section 2254 Cases apply to § 2241 petitions. *See Tanner v. MacDonald*, Civ. No. 11-00255 SOM/RLP, 2011 WL 1598838, at *1 n.2 (D. Haw. Apr. 27, 2011).

A COA may issue only if the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "The standard for a certificate of appealability is lenient." *Haward v. Marshall*, 603 F.3d 546, 553 (9th Cir. 2010) (en banc), *overruled on other grounds by Swarthout v. Cooke*, 562 U.S. 216 (2011). The petitioner is required to demonstrate only "that reasonable jurists could debate the district court's resolution or that the issues are adequate to deserve encouragement to proceed further." *Id*. (internal quotation marks omitted).

This Court has carefully reviewed Petitioner's § 2241 Petition and finds that the issues presented herein are not debatable among jurists of reason. Accordingly, the questions raised do not deserve encouragement to proceed further. Thus, this Court **DENIES** Petitioner a certificate of appealability.

## CONCLUSION

The petition under 28 U.S.C. § 2241 challenging a court-martial conviction and accompanying sentence (ECF No. 1) is **DENIED**. The Court **DENIES** Petitioner a certificate of appealability.

**IT IS SO ORDERED.**

15

3:17-cv-01298-GPC-JMA

Dated: April 16, 2018

                                                *[signature]*
Hon. Gonzalo P. Curiel
United States District Judge